(February 10, 1909.)

EDWIN McBEE, Plaintiff, v. JAMES H. BRADY, as Governor, Defendant.

[100 Pac. 97.]

Constitution—Amendment — Proposal—Submission—Time of Taking Effect—What is a Separate Amendment—Jurisdiction of the Courts to Determine.

   1. Art. XX, sec. 1, of the constitution provides that amendments to the constitution may be proposed in either branch of the legislature, and if the same shall be agreed to by two-thirds of the members of each of the two Houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the legislature to submit such amendment or amendments to the electors of

the state at the next general election; and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of the constitution.

2. The provisions in this section with reference to entering the proposed amendment or amendments, together with the yea and nay vote thereon, upon the journal, are mandatory.

3. Sec. 2 of the same article provides if two or more amendments are proposed, they shall be submitted in such manner that the electors shall vote for or against each of them separately. This provision of the constitution is also mandatory.

4. Amendments to the constitution may be proposed in either branch of the legislature by a joint resolution, and the provision of sec. 18, art. III of the constitution, governing amendments to statutes, does not apply.

5. In determining the validity or constitutionality of a constitutional amendment, the court will not concern itself with the justice or wisdom of the amendment, and will presume that the legislature acted regularly in submitting the same to the voters of the state, and will uphold and sustain such amendment unless it appears that the same has not been proposed, submitted and adopted in accordance with the provisions of the constitution.

6. The question, as to whether the constitution has been complied with in proposing, submitting and adopting a constitutional amendment, is a judicial question, and no authority is vested in any officer, department of state, body politic, or tribunal, other than the courts, to consider and determine such matter.

7. The provision of sec. 2, art. XX of the constitution, wherein it is provided that ''if two or more amendments are proposed, they shall be submitted in such manner that the electors shall vote for or against each of them separately,'' means that all changes which relate to one subject and accomplish a single purpose, shall be treated, recognized and submitted as a single amendment.

8. Under this provision of the constitution the legislature cannot incorporate into a single amendment several distinct and independent subjects and submit the same as a single amendment.

9. The determination of the question as to whether a proposed change or changes in the constitution constitutes one or more amendments, depends upon whether the change as proposed relates to one subject and accomplishes a single purpose. If it does not, then there are as many amendments as there are independent subjects, and it matters not whether the proposed change affects one or many sections or articles of the constitution.

10. While the constitution prescribes no particular method or form for proposing and submitting amendments to the constitution, the better course to pursue is to indicate in the resolution proposing the amendment the particular matter to be inserted or omitted as

an amendment, and the particular place in the section the amendment is to be inserted.

11. Where several distinct and independent changes to the constitution are proposed, and are incorporated in the same resolution, they must be submitted in such a way that the electors may vote upon each amendment separately.

12. Where a section of the constitution is amended at the same time by two different amendments, and the amendments adopted are directly in conflict, and it is impossible to determine which should stand as a part of the constitution, or to reconcile the same, they must both fail.

13. Sec. 1, art. XX, of the constitution, provides that an amendment shall become a part of the constitution upon its ratification, and the legislature has no power to change this provision of the constitution.

14. Where it is proposed to make an amendment to the constitution become operative upon a date different from that fixed by the constitution, then the time so fixed should be incorporated in and made a part of such amendment.

15. The legislature has no power to incorporate in a joint resolution, proposing amendments to the constitution, any matter except the amendment proposed and the question and manner of submitting the same.

(Syllabus by the court.)

An original proceeding brought in this court to test the question as to whether an amendment to the constitution has been regularly adopted and become a part of such constitution.

C. H. Potts, L. L. Feltham, K. I. Perky, Edwin McBee and J. L. McClear, for plaintiff.

Courts have nothing to do with the justice, wisdom, policy or expediency of a law. These are matters purely of a legislative deliberation and cognizance. (10 Am. Digest, Cent. ed., p. 1426, and cases cited.) The established canons of construction applicable to statutes apply as well to constitutions. (10 Am. Digest, Cent. ed., p. 1223, and cases cited; *People v. Potter,* 47 N. Y. 375; 8 Cyc. 729.) If, in construing a constitutional provision, the court cannot give effect to all of it, it will not for that reason refuse to give effect to any part of it, but will enforce the provision as far as possible.

(10 Am. Digest, Cent. ed., p. 1223, citing *Cummings v. Spaunhorst*, 5 Mo. App. 21; 5 Current Law, p. 624.)

It is true both the title to this amendment and the question submitted to the people contained reference to the repeal and amendment of several sections of the constitution, but all objects stated in the title and in the questions submitted are germane to the one central idea of the alteration of court system. (*State v. Timme*, 54 Wis. 318, 11 N. W. 785; *State v. Herried*, 10 S. D. 109, 72 N. W. 95; *People v. Sours*, 31 Colo. 369, 102 Am. St. Rep. 34, 74 Pac. 167; *Lobaugh v. Cook*, 127 Iowa, 181, 102 N. W. 1121; *Gabbert v. Chicago R. I. P. Ry. Co.*, 171 Mo. 84, 70 S. W. 891; *State v. Board*, 34 Mont. 426, 87 Pac. 450; *Wheeler v. Herbert*, 152 Cal. 224, 92 Pac. 354.)

Conceding that the constitution required that, when several proposed amendments are submitted to the people, they shall be so submitted that the electors may vote for or against any amendment without voting on any other amendment, it is too late to question the election, because of ambiguity on this point in the submitting statute, when the election has proceeded throughout the state without objection on the part of any person, and every qualified elector, who desired to exercise his franchise, has done so without seeking to vote on some of the amendments, while refraining from voting on the rest. (*Botts v. Wurts* (1899), 63 N. J. L. 289, 43 Atl. 744, 45 L. R. A. 251; *Holmberg v. Jones*, 7 Ida. 758, 65 Pac. 564.)

Sec. 1 of art. 20 of the constitution of Idaho, upon the adoption of amendments, provides: ''If a majority of the electors shall ratify the same, such amendment shall become a part of this constitution,'' thus in effect saying that an amendment becomes a part of the constitution at once upon its ratification by the electors' votes. If the constitution provides when an amendment shall become operative, can the legislature by providing otherwise, legally change the time, or is this act in that respect void and should it be ignored in the interpretation of the amendment? (*In re Advisory Opinion*, 34 Fla. 500, 16 South. 419; *Schall v. Bowman*, 62 Ill. 321; *Bray v. City Council of Florence*, 62 S. C. 57, 39

S. E. 810; *Prohibitory Amendment Cases,* 24 Kan. 700; *Wade v. Town of Lamoille,* 112 Ill. 79.) The adoption of a constitutional amendment is at the time it is voted on. (*Baker v. State* (Tex. Cr. App.), 24 S. W. 31; *Hays v. Hays,* 5 Ida. 156, 47 Pac. 732.) "Constitutions must be construed, if possible, so as to give force and effect to each provision." (10 Am. Digest, Cent. ed., p. 1223, and cases cited.)

There is nothing in the constitution of Idaho providing the form of ballot when voting on an amendment. The ballot need not contain a statement of the distinct and different purposes to be accomplished by the amendment. All the constitution demands is a submission of the amendment itself to the electors of the state.

When a proposed constitutional amendment is published in full in each county in the state preceding the election for its adoption, its validity cannot be assailed because it was submitted under a misleading title, without proof that any elector was deceived thereby. (*People v. Sours, supra; People v. Loomis,* 135 Mich. 556, 9 N. W. 252; *Russell v. Croy,* 164 Mo. 69, 63 S. W. 849; *State v. Laylin,* 69 Ohio St. 1, 68 N. E. 574; *Lovett v. Ferguson,* 10 S. D. 44; 71 N. W. 765; *State v. Herried,* 10 S. D. 109, 72 N. W. 93.)

D. C. McDougall, Attorney General, John F. MacLane, J. H. Peterson, James H. Hawley, Frank T. Wyman and John P. Gray, for Defendant.

Ben F. Tweedy, G. Orr McMinimy, Chas. L. MacDonald, Clay McNamee, James L. Harn, E. J. Doyle, F. D. Culver, S. O. Tannahill, P. E. Stookey, I. N. Smith, Eugene O'Neill, J. B. West, Daniel Needham, John O. Bender and E. L. Elliott, *Amici Curiae.*

The courts can inquire into the constitutionality of the adoption of a mere amendment to the existing constitution. There is a clear legal difference between a change in a portion of the existing government, and in the establishment of an entirely new government under a new constitution. (*Miller v. Johnson,* 92 Ky. 589, 18 S. W. 522, 15 L. R. A. 524; *Taylor v. Commonwealth,* 101 Va. 829, 44 S. E. 754; *Koehler v. Hitt,* 60

Iowa, 543, 604-614, 14 N. W. 738, 15 N. W. 609.) Furthermore, the validity of judiciary amendments has been passed upon in several cases. (See *State v. Powell,* 77 Miss. 543, 27 South. 927, 48 L. R. A. 652; *Lobaugh v. Cook,* 127 Iowa, 181, 102 N. W. 1121.) The right and duty of the courts to inquire into the compliance or noncompliance with the requirements of the constitution in submitting and adopting amendments to that instrument has been recognized and enforced in a long line of decisions. (*"Opinion of Judges,"* 6 Cush. (Mass.) 573; *Collier v. Frierson,* 24 Ala. 108; *State v. McBride,* 4 Mo. 303, 29 Am. Dec. 636; *State v. Swift,* 69 Ind. 505; *State v. Timme,* 54 Wis. 318, 11 N. W. 785; *Bott v. Wurtz,* 63 N. J. L. 289, 43 Atl. 744, 881, 45 L. R. A. 251; *University v. McIver,* 72 N. C. 76; Cooley's Const. Lim. 30.)

"If two or more amendments are proposed, they shall be submitted in such a manner that the electors shall vote for or against each of them separately." (Art. 20, sec. 2, Idaho Const.) Under the authorities above cited this is a mandatory requirement, and the sufficiency of the compliance therewith either by the legislature or by the people in attempting to amend the constitution, is a subject of judicial inquiry. (See, also, *State v. Mason,* 43 La. Ann. 590, 658, 9 South. 776; *State v. Herried,* 10 S. D. 109, 119, 72 N. W. 95; *Gabbert v. Chicago etc. R. R.,* 171 Mo. 84, 91, 70 S. W. 891; *People v. Sours,* 31 Colo. 369, 400, 102 Am. St. Rep. 34, 74 Pac. 167.)

We have two amendments to section 6, art. 18, submitted on the same day, both claiming to have been adopted and each inconsistent with the other. It is not a case of two new sections being added to the constitution, which are inconsistent with each other, but of two distinct readings of the same original section. Authorities construing conflicting legislative enactments, bearing the same date are not in point, as one such enactment must follow the other in point of time, as would be shown by the journals of the legislature. (*In Re Senate File 31,* 25 Neb. 864, 881, 41 N. W. 981.) Every proposal to amend a section of the constitution should be separately submitted by giving the words which it is proposed to

add to or take from the section. (*Gabbert v. Chicago etc. Railroad,* 171 Mo. 84, 70 S. W. 891.)

There was nothing on the ballot to indicate that the operation of the act was to be postponed until 1911. If voters were actually misled by the method adopted by such submission, the popular will has not been expressed on the matter and the amendment must fail. (*State v. Board etc. of Washoe County,* 22 Nev. 399, 41 Pac. 145; *State v. Hoadley,* 20 Nev. 317, 22 Pac. 99; *State v. Hallock,* 19 Nev. 384, 12 Pac. 832; Cooley's Const. Limit. 148; *People v. Hills,* 35 N. Y. 452; *People v. Mahaney,* 13 Mich. 494.)

STEWART, J.—This is an original proceeding brought in this court for *mandamus* to compel the governor of this state to call an election in accordance with the provisions of a constitutional amendment adopted by the voters of this state at the general election held on November 3, 1908. The real question involved is: Was such amendment proposed, submitted and adopted according to the provisions of the constitution of this state? The amendment is very lengthy, and consists in repealing secs. 11 and 21 of art. 5 of the constitution and in amending secs. 2, 17, 20 and 24, art. 5, and sec. 6, art. 18 of the constitution.

Sec. 11, art. 5, repealed by the amendment, provides that the state shall be divided into five judicial districts, that a judge shall be elected for each, that district courts shall be held in each county at least twice a year, that the legislature may increase the number of districts and district judges, and that special terms of the court may be held.

Sec. 21, repealed by the amendment, provides that probate courts shall be courts of record, and for their jurisdiction.

Sec. 2, art. 5, vests judicial power in a court for impeachments, supreme, district, probate, justice's and city courts. The section as amended vests the power in the same tribunals, excepting probate courts.

Sec. 17 of the same article fixes the salaries of the supreme justices at $3,000 and the district judges at $3,000 until otherwise fixed by the legislature. Sec. 17, as amended, increases

the salary of the supreme justices to $4,000 until otherwise provided by the legislature, and provides that the salary of the judges of the district court shall be as otherwise provided by law.

Sec. 20 defines the jurisdiction of the district court, and confers upon such court original jurisdiction in all cases both at law and equity, and such appellate jurisdiction as may be conferred by law. The section as amended confers upon the district courts original jurisdiction in all cases both at law and in equity and all matters of probate, settlement of estates of deceased persons and appointment of guardians, and such appellate jurisdiction as is now or may hereafter be conferred by law.

Sec. 24 divides the state into judicial districts and specifies the counties composing the same until otherwise provided by law. The section as amended provides that each county shall be a judicial district, provided that counties casting less than two thousand votes for governor shall be united with the adjoining county, and certain counties are united until each shall cast over two thousand votes; provides for additional judge for districts casting over twelve thousand votes; provides that court shall be open continuously in single county districts, and in districts composed of two counties the judge shall hold court in accordance with rules to be fixed by the judge; provides for the salary of district judges to be classified according to vote for governor, ranging from two to three thousand dollars, to be paid half by county and half by state, and to be apportioned between the counties paying the same according to assessed valuation.

Sec. 6, art. 18, enumerates the various county officers, which includes probate judge. The section as amended enumerates the same county officers excluding probate judge.

These various changes were all proposed in the same joint resolution reading as follows:

"Be it resolved by the legislature of the State of Idaho:

"Sec. 1. That Secs. 11 and 21 of Art. V of the Constitution of the State of Idaho be and the same are hereby repealed and annulled.

"Sec. 2.   That Sec. 2 of Art. V of the Constitution of the State of Idaho be amended to read as follows":

Then follows a copy of the original section with the amendment inserted therein.

"Sec. 3.   That Sec. 17 of Art. V of the Constitution of the State of Idaho be amended to read as follows":

Then follows the original section with the proposed amendment inserted therein.

"Sec. 4.   That Sec. 20 of Art. V of the Constitution of the State of Idaho be amended to read as follows":

Then follows the original section with the proposed amendment inserted therein.

"Sec. 5.   That Sec. 24 of Art. V of the Constitution of the State of Idaho be amended to read as follows":

Then follows the original section with the proposed amendment inserted therein.

"Sec. 6.   That Sec. 6 of Art. XVIII of the Constitution of the State of Idaho be amended to read as follows":

Then follows the original section with the proposed amendments inserted therein.

Sec. 7 reads as follows:

"These amendments shall become operative on the second Monday of January, 1911, and all causes then pending in the probate courts of said counties and all matters of probate unsettled in said probate courts, together with all the records of said courts shall be transferred at said time to the said district courts of their respective counties."

Then follows the provision with reference to the submission of said proposed amendment to the electors of the state and reads as follows:

"Shall Secs. 11 and 21 of Art. V of the Constitution of the State of Idaho be repealed and annulled, and Secs. 2, 17, 20, and 24 of art. V, and sec. 6 of art. XVIII of the Constitution of the State of Idaho be so amended as to abolish the probate court and extend the jurisdiction of the district court to all matters of probate and to provide for the election and appointment of judges therefor and their salaries and to provide for the terms of said courts and establish a system of districts."

It will thus be seen that in proposing the changes to be made in the constitution, the legislature followed the requirements of sec. 18 of art. 3 of the constitution governing amendments to the statutes,—that is, that no act shall be revised or amended· by mere reference to its title but the section as. amended shall be set forth and published at full length. A joint resolution, however, proposing an amendment to the constitution, is not a bill or act as recognized by the constitution,. and is not required to pursue the same course in its adoption as an act, and the provision with reference to the method of amending the statutes does not govern amendments to the constitution. This requirement is not found in art. 20 of the constitution, which provides for amending the same. The constitution, art. 20, sec. 1, with reference to amendments reads as follows:

"Any amendment or amendments to this constitution may be proposed in either branch of the legislature, and if the same shall be agreed to by two-thirds of all the members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next- general election, and cause the same to be published without delay for at least six consecutive weeks, prior to said election, in not less than one newspaper of general circulation, published in each county; and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution."

Sec. 2: "If two or more amendments are proposed, they shall be submitted in such manner that the electors shall vote for or against each of them separately."

Sec. 3: "Whenever two-thirds of the members elected to each branch of the legislature shall deem it necessary to call a convention to revise or amend this constitution, they shall recommend to the electors to vote at the next general election for or against a convention, and if a majority of all the electors voting at said election shall have voted for a convention, the legislature shall at the next session provide by law for

calling the same; and such convention shall consist of a number of members not less than double the number of the most numerous branch of the legislature.''  ·

Sec. 4: ''Any constitution adopted by such convention, shall have no validity until it has been submitted to, and adopted by, the people.''

This article provides two methods of amending or changing the constitution of this state: First, by amendment proposed in either branch of the legislature and concurred in by both and submitted to and ratified by the electors of the state; second, constitutional convention called by two-thirds of the members elected to each branch and ratified by the electors at a general election.

An examination of art. XX of the constitution, *supra,* discloses that the same does not provide specifically for the manner in which amendments to the constitution may be proposed or the form in which the amendments are to be submitted to the electors of the state.   The only specific direction is that the amendment or amendments may be proposed in either branch of the legislature and if the same shall be agreed to by two-thirds of the members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it is then made the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election, etc.

Thus it will be seen this section does not specify the particular form or method by which the proposed amendments shall be presented or the form or method in which or by which · they shall be submitted to the electors for adoption.   Sec. 2, however, of the same article does provide that such amendments shall be submitted in such manner that the electors shall vote for or against each of them separately.   An examination of the legislative journals of this state since statehood discloses that it has been the universal practice to propose amendments and provide for their submission to the people by a joint resolution, and this court has held that this method is a

compliance with the constitutional requirements. (*Hays v. Hays*, 5 Ida. 154, 7 Pac. 732.)

The provisions, however, found in sec. 1, requiring that the amendments proposed should be agreed to by two-thirds of all the members of each of the two Houses, voting separately, and should with the yeas and nays thereon be entered upon the journal, are mandatory provisions and require a compliance therewith in initiating a proposed amendment to the constitution. Then follows the provision which requires the legislature to submit such amendment or amendments to the electors of the state, qualified and governed by the provisions of sec. 2, that the submission shall be in such manner that the electors shall vote for or against each separately. This provision of sec. 2 is mandatory, and requires a submission in such manner that the electors may vote upon each amendment separately. (*Oakland Paving Co. v. Hilton*, 69 Cal. 479, 11 Pac. 3; *Livermore v. Waite*, 102 Cal. 113, 36 Pac. 424, 25 L. R. A. 312; *Koehler v. Hill*, 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609; *Collier v. Frierson*, 24 Ala. 100; *State v. Powell*, 77 Miss. 543, 27 South. 927, 48 L. R. A. 652.)

In the absence of specific directions as to the method to be pursued in proposing amendments to the constitution, there can appear no good reason why the same may not be done by a joint resolution in the manner followed in the case under consideration, and while amendments may be proposed in this manner, yet the submission of such amendments to the electors involves an entirely different proposition and the legislature is required to submit the amendment or amendments so that each amendment may be voted upon separately. This provision of the constitution is a wise one, and is intended to prevent several inconsistent and conflicting propositions from being submitted to the voters in the same amendment and forcing the voter to approve or reject such amendment as a whole. In other words, it prevents burdening a meritorious proposition with a vicious one, and alike prevents a vicious proposition from having the support of a meritorious one, and gives to the voter the right to have each separate proposi-

tion submitted to him in order that he may express his will for or against each separately without being compelled to accept a provision to which he is opposed in order to have adopted a provision which meets his favor. (*State v. Timme,* 54 Wis. 318, 11 N. W. 785; *State v. Herried,* 10 S. D. 109, 72 N. W. 95; *Lobaugh v. Cook,* 127 Iowa, 181, 102 N. W. 1121; *State v. Powell,* 77 Miss. 543, 27 South. 927, 48 L. R. A. 652; *Gabbert v. Chicago etc. Ry. Co.,* 171 Mo. 84, 70 S. W. 891.)

If, then, these provisions of the constitution are mandatory, and the legislature in proposing and submitting amendments to the constitution is required to comply with such provisions, the jurisdiction and power to determine whether the legislature has complied with the constitution must necessarily rest with some tribunal or department of state. In this connection it is argued by counsel for plaintiff that the courts should presume the regularity of the proceedings, and have no jurisdiction or power to determine that a proposed constitutional amendment has not been made a part of the constitution, after the same has been ratified by a majority of the electors voting thereon; that in determining the regularity of the proceedings in relation to the proposal to amend and the procedure in submitting the same for adoption or rejection, that it is the duty of the court to uphold, if possible, the validity of the amendment, and for that purpose the court should presume in favor of the regularity of the proceeding and the constitutionality of the amendment.

We think it may be conceded that in determining the questions involved in this case this court has no concern whatever with the justice or wisdom of the provisions of the proposed amendment, and that in determining its validity the court will presume that the legislature acted regularly in submitting the same to the voters of the state, and will uphold and sustain the validity of such amendment unless it appears that the same has not been submitted and adopted in accordance with the provisions of the constitution of this state which regulates and controls the method and manner of amending such constitution.

This court in the case of *Holmberg v. Jones*, 7 Ida. 752, 65 Pac. 563, in considering an amendment to the constitution of this state, says:

"It cannot be questioned but that any voter of the state, by proper proceedings in the district court, or in this court, could have obtained a writ of prohibition restraining the Secretary of State from certifying the question of adopting said proposed amendment to the various county auditors. The official ballot could have been protected against the improper submission of such question, and could have been purged of the presence of such question thereon, by proper judicial proceeding. This not being done, and the question of the adoption of said amendment being suffered to appear upon the official ballot at the election in 1898, should not the rule of estoppel which was applied by this court in case of *Baker v. Scott*, 4 Ida. 596, 43 Pac. 76, and in *People v. Alturas Co.*, 6 Ida. 418, 55 Pac. 1067, 44 L. R. A. 122, and which applies to ordinary elections, be applied here? The authorities upon this point are divided, and, in our view of this case, it is not necessary for us to determine this point."

Thus it will be seen that this court did not decide the question suggested, but from the language used counsel for plaintiff contend that this case is authority and supports the argument that after a constitutional amendment has been voted upon by the qualified electors of the state and by them approved, that the courts should not assume to interfere with the judgment thus expressed. In the case above it was not necessary for the court to have made the observations therein contained in order to reach a conclusion. The question apparently was not involved. In any event this court therein stated that it was not necessary to pass upon such question, so we do not consider the language used as authority upon the question now under consideration and especially is that true in view of the circumstances surrounding the cases cited by the court in the Holmberg-Jones case, and the circumstances surrounding the question involved in the case now under consideration. In this case it is not claimed that any state officer or any of the departments of this state have in

any way recognized the validity of the amendment under consideration. In fact, the very contrary appears by reason of the fact that under the amendment, if adopted, the very first step to be taken, in carrying into execution its provisions, was the calling of an election by the governor in accordance with its provisions, and this the governor has declined to do, and this action is for the very purpose of compelling him to recognize the validity of such amendment. So for the reasons given above the case of *Holmberg v. Jones, supra,* is not an authority upon the question now under consideration.

The constitution is the fundamental law of the state. It received its force from the express will of the people, and in expressing that will the people have incorporated therein the method and manner by which the same can be amended and changed, and when the electors of the state have incorporated into the fundamental law the particular manner in which the same may be altered or changed, then any course which disregards that express will is a direct violation of that fundamental law. These provisions having been incorporated in the constitution, where the validity of a constitutional amendment depends upon whether such provisions have been complied with, such question presents for consideration and determination a judicial question, and the courts of the state are the only tribunals vested with power under the constitution to determine such questions.

We do not understand the mere fact that the people of this state have expressed as their will that certain provisions should be incorporated in the constitution, such fact alone would make that expressed will a part of the constitution. The fundamental law of the state prescribes the limitations under which the electors of the state may change the same, and unless such course is pursued, the mere fact that a majority of the electors are in favor of a change, and have so expressed themselves, does not work a change. Such a course would be revolutionary, and the constitution of the state would become a mere matter of form.

The sane, safe and sound rule to guide the legislative department and the people in proposing and adopting amendments

to the constitution is that prescribed by the constitution, and this court, in determining whether that course has been pursued, should be guided and controlled by the same rule. This question is very tersely and forcibly stated in the case of *State v. Powell*, 77 Miss. 543, 27 South. 927, 48 L. R. A. 652, in the following language:

"It is the mandate of the constitution itself, the paramount and supreme law of the land, that such amendment cannot become part of the constitution unless two facts exist: First, unless such amendment or amendments should be submitted in the mode pointed out; second, unless such amendment or amendments should be adopted by the majority prescribed. These two conditions are facts which must exist in truth and in reality and not simply be declared to exist by the legislature whether they do exist or not. . . . . Amendments which are adopted owe their vitality to the action of the people, primarily; that action to be had in accordance with the method prescribed in sec. 273. The legislature simply proposes an amendment in the first instance and that is absolutely all that the legislature has to do with the matter. The people then act, and the next succeeding legislature, not the next session of the legislature proposing the amendment, is authorized to insert the amendment as a part of the constitution if the former legislature shall have validly submitted it and the people shall have validly adopted it. The legislature, in what it has to do, acts ministerially, as the agent of the people, through the provisions of sec. 273, in first proposing and afterward inserting the amendment; but the people cannot vote effectually upon an amendment unless it shall have been submitted in the mode pointed out, and the vital things are the existence of the facts named, submission in conformity with sec. 273, and adoption by the majority therein prescribed, upon which facts or conditions the vitality of the amendment itself—its right legally to be written and inserted into the constitution—depends."

To the same effect, also, *Oakland Paving Co. v. Hilton*, 69 Cal. 479, 11 Pac. 3; *Livermore v. Waite*, 102 Cal. 113,

36 Pac. 424, 25 L. R. A. 312; *Koehler v. Hill,* 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609; *Collier v. Frierson,* 24 Ala. 100.

Whether the constitutional method has been pursued is purely a judicial question, and no authority is vested in any officer, department of state, body politic, or tribunal, other than the courts, to consider and determine that matter. (*State v. McBride,* 4 Mo. 303, 29 Am. Dec. 636; *State v. Powell,* 77 Miss. 543, 27 South. 927, 48 L. R. A. 652; *Collier v. Frierson,* 24 Ala. 100; *State v. Swift,* 69 Ind. 505; *State v. Timme,* 54 Wis. 318, 11 N. W. 786; *Koehler v. Hill,* 60 Iowa, 543, 14 N. W. 738, 13 N. W. 609; *Sccombe v. Kittelson,* 29 Minn. 555, 12 N. W. 519; *Green v. Weller,* 32 Miss. 650; *Sproule v. Fredericks,* 69 Miss. 898, 11 South. 472; *Gabbert v. Chicago etc. Co.,* 171 Mo. 84, 70 S. W. 891; 6 Am. & Eng. Ency. of Law, 908; 8 Cyc. 719, 720.)

We therefore approach the consideration of the particular objections made to the validity of the amendment now under consideration, giving full recognition to the constitution as the paramount law of the state, and recognizing that its provisions control and govern all departments of the state, the legislative and executive, alike with the judicial, and that no officer, department of state, or tribunal can disregard the mandatory provisions of the constitution, and then say that the same is not open to examination or consideration by the judicial department of this state. Believing, then, as we do, that the questions involved in this case are judicial, and that this court is governed by the provisions of the constitution in determining that matter, we shall take up and consider the various objections made by counsel for defendant to the validity of the constitutional amendment now under consideration.

This brings us to the consideration of the chief contention made by counsel for defendant. That is, that more than one amendment was submitted under the joint resolution with no provision made by which the electors might vote upon each amendment separately; in other words, that the question submitted involved several amendments, and that the voter was given no opportunity to vote upon each separately.

Looking, then, at the amendment submitted and under consideration, we find that the joint resolution proposed that two sections of the constitution be repealed and that five other sections of the constitution be amended, and the joint resolution in its terms submitted to the electors, as we read the submission, five different propositions: First, to abolish the probate court and extend the jurisdiction of the district court to all matters of probate; second, to provide for the election and appointment of judges; third, to provide for the salaries of judges; fourth, to provide for the terms of said courts and fifth, a system of districts.

It thus appears that the legislature, in providing for the submission of the proposed changes in the constitution, recognized and considered that the questions covered thereby involved several distinct and independent propositions and so stated in the resolution submitting such questions. In this conclusion the legislature was certainly correct, as the particular matter covered by the proposed changes involved distinct and independent propositions; yet, notwithstanding that fact, the legislature made no provision, and gave the voter no opportunity to vote upon each of these propositions separately. The entire matter was submitted to the electors in a lump, and they were compelled to accept or reject all of the propositions, all of the proposed changes. They had no choice. If the elector had had an opportunity, he might have desired to express his will in favor of abolishing the probate courts and extending the jurisdiction of the district court to all matters of probate. Yet, he might not have approved the method suggested for the election and appointment of judges; neither might he have approved the provisions as to salaries or the provision with reference to the terms of court or the system of districting the state. So in like manner he might have approved any one of the propositions and disapproved all others, and *vice versa*, but under the method adopted no choice was given him. He was forced to approve or disapprove all of these matters as a single proposition.

Just what is meant by the provisions of sec. 2, art. 20, "that if two or more amendments are proposed they shall be

submitted in such manner that the electors shall vote for or against each of them separately," is not an easy matter to determine, but it was evidently the intention by this provision to require that propositions which were incongruous or which did not relate to the same subject matter or have the same object and purpose, should be considered as separate amendments. In discussing this question the supreme court of the state of Wisconsin in the case of *State v. Timme*, 54 Wis. 318, 11 N. W. 54, says:

"In order to constitute more than one amendment, the propositions submitted must relate to more than one subject, and have at least two distinct and separate purposes not dependent from or connected with each other."

This same rule seems to be recognized by the courts generally. (*In re Senate File 31*, 25 Neb. 864, 41 N. W. 981; *State v. Herried*, 10 S. D. 109, 72 N. W. 93; *Gabbert v. Ry. Co.*, 171 Mo. 84, 70 S. W. 891.)

The determination whether a proposed change in the constitution constitutes one or more amendments, it seems to us, depends upon whether the change as proposed relates to one subject and accomplishes a single purpose, and the true test should be, can the change or changes proposed be divided into subjects distinct and independent and can any one of them be adopted without in any way being controlled, modified or qualified by the other? If not, then there are as many amendments as there are distinct and independent subjects, and it matters not whether the proposed change affects one or many sections or articles of the constitution.

First; the change of salary of the supreme justices is a complete subject, and in no way will be affected, controlled or modified by any of the other proposed changes. Such change would have been complete within itself had all the other proposed changes been omitted.

Second; what has been said with reference to the salary of the supreme justices applies alike to the change of salary and the method of paying the same of the district judges.

Third; the same also applies to the abolishment and merger of the jurisdiction of the probate courts in the district courts.

Fourth; the same is true also of the territorial limits of the judicial districts.

Fifth; the same is also true of the change as to the terms of court to be held each year in each district.

Sixth; the same is also true as to the number of district judges in each district.

From this analysis it appears that the legislature incorporated in a single amendment six distinct and independent propositions, any one of which could have been adopted by the electors, and its efficiency or completeness not have been in any way modified or qualified by a failure to adopt any one or more of the other questions. While the constitution places no limitations upon the legislature as to the form of proposing amendments, yet it does fix and define the manner of submitting the same for adoption by the electors, and requires that the submission be in such form that the electors may vote upon each separately.

An examination of the amendments proposed by the joint resolution and the question submitted to the electors discloses the fact, that the proposed change in the salary of the supreme justices was not incorporated in the questions submitted. In other words, the questions submitted as contained in the resolution made no reference whatever to the question of alteration in the salary of the supreme justices, and gave the voter no information whatever that by voting in favor of the propositions submitted he was voting to alter the salary of the supreme justices, so it appears at least one question, and that a distinct and independent proposition, and no way involved or controlled by the other questions submitted, while proposed in the joint resolution as an amendment, was not submitted for adoption under the provisions of the resolution. The questions submitted should be the same questions proposed as the amendment or amendments. The legislature cannot propose one question and submit to the voters another. Such a course is misleading, and might result in the adoption of an entirely different proposition from that submitted. The very purpose of requiring that amendments proposed shall be entered at length upon the journals

of the two branches of the legislature and submitted in such manner that the voters may vote for each amendment separately is to advise the public and the voter fully as to the questions submitted and upon which he may vote. If the method adopted in this case be sustained, the entire constitution could be changed by one amendment, by submitting to the electors but one single proposition and permitting them to make such alteration by a single vote; yet, it must be conceded that the constitution provides for many distinct and independent propositions which are in no way involved or controlled by the other provisions. In this connection we may well observe that while there is no provision in the constitution which prescribes the particular method to be pursued in proposing and submitting amendments thereto, yet the better and clearer course would be to indicate in the resolution proposing the amendment the particular matter to be inserted or omitted as an amendment and the particular place the amendment is to be made. In other words, that in place of proposing the section as the amendment, a better course would be to incorporate in the proposition the particular matter to be adopted as the amendment. The reason for this suggestion will be more apparent as we hereafter consider the provisions of sec. 6, art. 18, as submitted for amendment under Joint Resolution 3 and Joint Resolution 10 and voted upon and adopted at the same time. By following the course herein suggested, if the same particular subject was dealt with in several sections of the constitution, the proposed amendment could cover the necessary changes to be made in each section, and in submitting such proposed amendments for adoption the resolution should provide that each distinct and independent subject should be submitted as one question to be adopted by a yea or nay vote of the electors.

The form of proposing and submitting amendments to the constitution is discussed at length in the case of *Gabbert v. Chicago etc. Ry. Co.*, 171 Mo. 84, 70 S. W. 891. In that case the court, in considering the argument of counsel, says:

"The predicate of this argument ignores the Constitution itself. It assumes that the Legislature submitted to the peo-

ple the whole of sec. 28 in two separate amendments, when in fact it submitted two amendments only and was not authorized by the Constitution to submit anything but *'the amendments,'* and the voters of the State were authorized only to vote on the *amendments,* and the Secretary of State was authorized to certify only the result of the vote on the amendments.

"Indeed, counsel correctly concede this when they say, 'The Constitution requires amendments to be voted on *separately.    It does not require that the section as amended shall be set out in full.    That provision is only applicable to statutes.    (Art. 4, sec. 34 of the Constitution.)'*    There is and was no authority for the General Assembly to submit to the voters *'the section as amended,'* and yet it is only by substituting 'the sections as amended' for *'the amendments'* that the supposed conflict is produced.    When the Legislature submitted the two amendments and the people adopted them at the polls, the section 28 was amended as proposed and nothing that the Legislature may have said about how the section should read after their adoption could contravene what the Constitution required.

"After the two amendments were adopted and placed in the section at the places which they directed on their face that they should be, any person, layman as well as lawyer, could read them into the section and know that the Constitution was thus amended."

The course considered and approved by the court in that case seems to meet the requirements of the constitution of this state, and the difficulties with which we are now confronted would easily be obviated if the course pointed out in this decision were pursued.

The legislature in this state (Rev. Codes, sec. 405) has made provision for placing the questions submitted by amendments upon the ballot as follows:

"When a constitutional amendment is to be submitted to a vote of the people the question shall be printed on a separate ballot on pink colored paper, and this colored paper shall not be used in printing ballots referring to any other questions.

than those of constitutional amendments: *Provided,* That if more than one constitutional amendment is to be voted on at any election they shall all be printed on one ballot.''

This section further provides:

''The ballots shall be seven inches wide and shall be attached to a stub or counterfoil two inches wide by a perforated line. At the top of the pink colored ballots shall be the words 'Constitutional Amendment' or 'Constitutional amendments,' as the case may be. . . . . In the space to the left of this perpendicular line shall be printed the question to be submitted to the vote of the people as now required by law. In the space to the right of this perpendicular line two circles each one-half inch in diameter shall be printed, one above the other with the word 'Yes,' to the left of the upper circle, and the word 'No' to the left of the lower circle.''

We thus see from this statute that while the preparation of the ballot is clearly provided for, no provision is made for the determination of what is a single constitutional amendment. The legislature no doubt concluded that the determination of that question should be left to the legislature proposing the amendment for adoption. This conclusion is clearly correct, and in proposing and submitting amendments to the constitution the legislature should clearly indicate each separate, distinct and complete proposition as a single amendment and the voter be given an opportunity to express his will with reference thereto.

It is next urged by counsel for defendant that sec. 6, art. 18, included as a part of said proposed amendment, is in conflict with the same section and article covered by a proposed amendment thereto by Joint Resolution No. 10 passed by the legislature at the same session and submitted and voted upon by the electors of the state at the same election and by them adopted. Sec. 6 as amended by the amendment submitted by Joint Resolution 3 changed such section by omitting therefrom the words ''probate judge.'' The amendment submitted under Joint Resolution No. 10 amended said section by adding thereto the word ''assessor'' among

the names of the officers who were empowered to appoint deputies and clerical assistance by the board of county commissioners. Resolution No. 3 submitted sec. 6 amended by the omission of the words "probate judge," as the amendment; while Resolution No. 10 submitted sec. 6 with the words "probate judge" therein and also the word "assessor" added as the amendment.

Thus the first amendment contains the section with the words "probate judge" out and the word "assessor" out, while the second amendment contains the section with the words "probate judge" in, and the word "assessor" in. Both of these amendments were submitted and voted upon at the same election and both adopted. Thus, we have sec. 6, art. 18, amended, by omitting the words "probate judge" therefrom, and no mention made of the office of assessor as an officer who should have deputy or clerical assistance; and also by retaining the words "probate judge" and also inserting the word "assessor" as an officer who might be authorized to appoint deputies. The provisions of the section thus amended are directly in conflict, and taking the section as a whole as the amended section, it is impossible to determine which of these two amended sections should stand as a part of the constitution of this state. It is impossible to reconcile the two amendments, and under the rule announced by the supreme court of Nebraska in the case of *In re Senate File 31*, 25 Neb. 864, 41 N. W. 981, both must fail. The conflict in these two sections arises out of the method adopted and pursued by the legislature in amending the same section and article, the same time. In other words, it is impossible to amend the same section, if the section, as a whole, is proposed as the amendment, in two different respects at the same time. The conflict will always occur. Referring again to the suggestions heretofore made as to the method of proposing and adopting amendments to the constitution, we think the better course is, that the proposition to amend refer to the particular matter of which the amendment consists, in which case no conflict need necessarily arise.

It is next argued by counsel for defendant that the provision with reference to the time the amendment should become operative rendered the amendment ineffective for two reasons: First, because the time fixed for the commencement of the operation of the amendment is not made a part of the proposed amendment, in which case, under the constitution, all amendments become operative upon their adoption; second, that the question of the time the amendments should become operative was not submitted to the voters, and for that reason they were misled. Under the constitution, upon the ratification of an amendment it becomes a part of the constitution, and while the legislature might propose an amendment which in itself provides for the time it would become operative, yet unless such time is incorporated in the amendment itself, the legislature has no authority to fix a time different from that prescribed by the constitution. In other words, if the amendment in its own terms fixes a time different from the constitution, and it is ratified, then it becomes just as much a part of the constitution as the present provision with reference to the time an amendment ratified should become a part thereof, but in the absence of such time being incorporated in the amendment, the legislature has no power to change the provisions of the constitution.

It therefore appears that the question as to the time the amendment should become operative was not incorporated in or made a part of the amendment proposed. Not only is that true, but sec. 7, providing for the time the amendments should become operative, was never submitted to the electors for their approval or disapproval. There is no reference whatever to the time the amendment should take effect in the question submitted and referred to in sec. 8, *supra.* The legislature has no power to change or alter the constitution. All the legislature has power to do is to submit proposed amendments for their approval or disapproval, and the provisions of sec. 7 are not attempted to be made a part of the proposed amendment. It is merely a declaration of the legislature and therefore has no force or effect whatever, yet, the very fact that it was incorporated in the resolution pro-

posing the amendment and fixing a future time for the amend-
ment to take effect may have been the sole inducement which
caused the passage of such resolution by the legislature, and
when it.fails, as it must, because the legislature had no power
to deal with the subject embraced therein, this court cannot
say that without that provision the legislature would have
adopted the remainder of the resolution. Situated as it is,
it seems to us to indicate clearly that some member of the
legislature, or perhaps a majority, hesitated or refused to
vote for the resolution without such amendment, and that
such amendment was an inducement which led to the pas-
sage of the resolution. In the case under consideration the
electors did not have an opportunity to express their approval
or disapproval of the provision contained in sec. 7, as to the
time the amendment should become operative, as that ques-
tion was not made a part of the question submitted to the
electors under the provisions of section 8.

For the reasons above given we conclude that the proposed
alterations and changes embraced in Joint Resolution No. 3
have not been made a part of the constitution of this state
and are not in force or effect as constitutional provisions. The
demurrer to the answer will be *overruled.* Inasmuch as there
are no issues of fact in this case, and it is conceded by the
respective counsel that the disposition of the demurrer dis-
poses of the case, the application for the writ will be denied
and the case dismissed without cost to either party.

Sullivan, C. J., concurs.

Ailshie, J., was not present at the hearing, and took no part
in the decision of this case.