(No. 6941.   July 2, 1941)

STATE ex rel F. B. KINYON, Plaintiff, v. MYRTLE P. ENKING, Treasurer of the State of Idaho, Defendant.

(115 Pac. (2d) 97)
Rehearing denied July 18, 1941

650

Hugh Redford, for Plaintiff.

Bert H. Miller, Attorney General, J. R. Smead, Leo

Bresnahan, M. Casady Taylor and Robert M. Kerr, Jr., Assistant Attorneys General, for defendant.

AILSHIE, J.—This action was brought by the State on relation of F. B. Kinyon, as a taxpayer on his own behalf and on behalf of other taxpayers of the state, for a writ of prohibition, commanding the defendant, State Treasurer, to desist from any further proceedings or action for sale to the Department of Public Investments (hereinafter called the Department), of certain bonds, denominated, "1941 Idaho State Institutions Improvement Bonds," amounting to $659,100, and authorized by chap. 186, 1941 Sess. Laws. The Department applied to the Board of Land Commissioners for authorization to purchase the bonds with "permanent educational funds" under its control; and the Board authorized the purchase to be made, as provided by 1933 Sess. Laws (Extra. Sess.), chap. 13, as amended by chap. 123, 1941 Sess. Laws. Approval of the purchase was also given by the State Board of Examiners, who directed the defendant

to sell the bonds to the Department. The Department made a written bid or offer for purchase of the bonds, at their face value, bearing 2½% interest, payable semi-annually beginning July 1, 1941.

Alternative writ of prohibition issued May 19th and was returned the same day. The matter was heard on motion to quash writ. The motion was based on the grounds that "State bonds" were included in the enumeration of securities provided for in sec. 11, art. IX of the state constitution as originally worded and adopted; and that no question, as to eliminating state bonds from the types of security has ever been submitted to the electors as required by sec. 1, art. 20 of the constitution.

Sec. 11, Art. IX of the constitution, as adopted in 1889, reads as follows: (Idaho Const. Convention, vol. II, p. 2072.)

"The permanent educational funds, other than funds arising from the disposition of university lands belonging to the state, shall be loaned on first mortgage on improved farm lands within the state, or on state or United States bonds, under such regulations as the legislature may provide; *Provided*, That no loan shall be made of any amount of money exceeding one-third of the market value of the lands at the time of the loan, exclusive of buildings."

The question for our decision is: Does the constitution, sec. 11, art. IX, since its amendment in 1928, authorize the loan of "The permanent educational funds other than funds arising from the disposition of university lands .... on state .... bonds...."

It is conceded that the original section so provided and that the amendment of 1900 (1899 Sess. Laws, p. 330) did not make any change in reference to acceptance of *state bonds*. It only added other securities; viz., "school district" bonds and "state warrants," to the list of acceptable securities. By the amendment proposed by H. J. R. No. 10, in the 1927 Session of the legislature, ('27 S. L., p. 589), the word "state" was omitted from the enumeration of the securities that might be accepted, so that, as adopted at the general election in 1928, the section, as amended, published and submitted to the voters, read as follows:

"The permanent educational funds other than funds arising from the disposition of university lands belonging to the State, shall be loaned on first mortgage on improved farm lands within the State, United States, county, city, village or school district bonds, or State warrants, under such regulations as the Legislature may provide: Provided, That no loan shall be made on any amount of money exceeding one-third of the market value of the lands at the time of the loan, exclusive of buildings."

Following that election, the 1931 Session of the legislature authorized compilation, annotation, and publication of the Codes, including the state constitution, which culminated in the publication and adoption of what is known as the Idaho Code Annotated 1932. Art. 9, sec. 11, was carried into this publication as submitted by the 1927 session and adopted at the succeeding election. (Quoted, supra.) A further amendment to the same section and article was submitted by the 1939 session, (S. J. R. No. 5, '39 Sess. Laws, p. 670) and adopted by the people at the subsequent election in 1940, ('41 S. L., p. 480) by which latter amendment the right to loan the permanent educational funds on first mortgages on improved farm lands was excluded from the list of acceptable securities. This amendment also omitted state bonds from the list of acceptable securities; the amended section reading as follows:

"The permanent endowment funds other than funds arising from the disposition of university lands belonging to the state, shall be loaned on United States, county, city, village or school district bonds or state warrants, under such regulations as the legislature may provide."

It is contended by the attorney general that the proposal to omit or delete state bonds from the list of acceptable securities was never submitted to the electors as a separate proposition for their approval or rejection, and has therefore never been approved by the people. He further contends that, under sec. 2, art. 20 of the constitution, and the decision of this court in the case of *McBee v. Brady*, 15 Idaho 761, it was necessary to submit such question as a separate, independent proposal to the people. In the McBee case we held that

"Where several distinct and independent changes to the constitution are proposed, and are incorporated in the same resolution, they must be submitted in such a way that the electors may vote upon each amendment separately."

In the same case it was further held that

"The provision of sec. 2, art. XX of the constitution, wherein it is provided that 'if two or more amendments are proposed, they shall be submitted in such manner that the electors shall vote for or against each of them separately,' means that all changes which relate to one subject and accomplish a single purpose, shall be treated, recognized and submitted as a single amendment."

In the case at bar, it should be remembered that the only subject the legislature was dealing with, when it made these amendments at different times, was the class and character of securities that should be required on the loaning of "permanent endowment funds other than funds arising from the disposition of university lands." It would no doubt have been more confusing to have submitted as many proposals as there were kinds of securities named in the original section, than to submit a single amendment, simply enumerating all those that could be accepted.

In *Mundell v. Swedlund,* 58 Idaho 209, we had occasion to consider a kindred issue raised under the provisions of secs. 1 and 2, art. 20, and, among other things, we said: (p. 230):

"In considering this phase of the case it should be borne in mind that the constitution does not contemplate that full information of the scope and effect of the proposed amendment shall be contained in the question placed on the ballot submitted to the voters for their approval or rejection. *That information is to be derived from the publication of the proposed amendment required by the constitution....*

"It was undoubtedly contemplated by the framers of the constitution, in requiring proposed constitutional amendments to be published for at least six consecutive weeks prior to the election, that the voters would be there-

by fully advised as to the nature, scope and effect of such proposed amendments and, therefore, nothing would need be contained in the question placed on the ballot other than sufficient description to identify the amendment proposed. *Undoubtedly the question propounded to the voters in this case was sufficient for that purpose.*" (Italics supplied.)

Furthermore, it must be remembered that the people are advised by publication in the local papers (Const., art. 20, sec. 1; *Mundell v. Swedlund, supra*) as to the language of the proposed amendatory section.

It is also contended that the omission of the word "state" from the amendment as proposed in 1927 was an oversight and unintentional, and that the legislature did not discover the mistake. As evidence supporting the latter contention, we are cited to 1927 Sess. Laws, chap. 264, sec. 4, p. 579, and I. C. A., (vol. 3, appendix,) pp. 1417, 1419; 1931 Sess. Laws, chap. 202, sec. 4, p. 376; I. C. A., vol. 3, pp. 1426, 1428; 1937 Sess. Laws, chap. 253, sec. 4, p. 483, wherein such loans were attempted to be authorized.

There are two answers to that contention: In the first place, the fact that the legislature enacted statutes in terms contrary or contradictory to a constitutional amendment they submitted, can not affect or alter the will of the people in adopting the proposed amendment. In the second place, the language used in the proposed amendment to sec. 11, art. 9 of the constitution, is not ambiguous or uncertain in any respect but on the contrary is language well understood.

Furthermore, we are unconvinced that any error or omission occurred. Experiences in losses of permanent educational funds on poor, and sometimes, excessive loans of educational funds, may have led some legislators to feel that it was no longer wise to allow these loans to the state on its own bonds where political influence sometimes controlled. There are as good reasons for precluding loans of endowment funds on state bonds as there are for precluding loans on first mortgages on improved farm lands. The state is as firmly bound to make good the one

loan as the other, and the power to compel it to do so is no more available in the one case than in the other. (Const., secs. 3 and 4, art. IX.)

If the people want to authorize the loaning of the permanent endowment funds on state bonds, they may authorize doing so by proper constitutional amendment, but since they have voted a change from the original constitution and eliminated "state bonds" as acceptable security, we are unauthorized to amend the constitution by judicial construction or interpolation.

The writ will issue as prayed for. No costs awarded.

Morgan and Holden, JJ., concur.

Budge and Givens, JJ., dissent.